**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| JAMES MICHAEL KENNEY-PRENTISS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:25-cv-02018-MPB-MJD |
| v. | ) | |
| | ) | |
| STEPHANIE RENEE HOFFER, | ) | |
| | ) | |
| Defendant. | ) | |

**RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY (DKT. 52)**

James Kenney-Prentiss's motion to compel lacks merit and is abusive and harassing. Stephanie Hoffer has responded to discovery adequately, and she has had made proper objections to those requests that go outside the bounds. Kenney-Prentiss has not identified any request for which Hoffer has not provided an appropriate response. As a result, there is nothing for this Court to compel. Hoffer respectfully requests that this Court deny his motion to compel and grant her reasonable attorney's fees incurred in responding, and all other appropriate relief.

## I. FACTUAL BACKGROUND

Hoffer has previously provided a detailed background of the history of litigation between the parties, including the extensive discovery resources expended in the state courts. As relevant to this discovery dispute, it is important to highlight the following:

**Past litigation**

1. Kenney-Prentiss and Hoffer were previously in a romantic relationship, which discontinued in 2023, and they share a minor child in common.

2. On February 27, 2024, Hoffer filed a petition for an order for protection from Kenney-Prentiss in state court in Boone County, Indiana, for alleged stalking and harassment, and she was subsequently granted an *ex parte* restraining order against Kenney-Prentiss.

3. During discovery for the protection order matter, Hoffer responded to over 150 discovery items and sat for an in-person deposition of roughly five hours that produced a 163-page transcript.

4. The protection order matter was continued for several months at the request of the parties. After the hearing, on December 24, 2024, the Boone County Superior Court I entered an Order on Hearing, denying Hoffer's request for an Order for Protection but stating as follows:

> **It is further ordered** that the same, this Order, does not constitute an unfettered license to communicate directly with the Petitioner [Hoffer] – for though the Respondent [Kenney-Prentiss] may offer communication to Petitioner, whether it is responded to or even accepted is up to her.
>
> Communication should be limited to that necessary for the parties to complete their legal affairs and said communication with Petitioner, on her election, may be by and through her counsel, Mr. Drew Kirages, or through other such attorney as the case may be.

(*See* Dec. 24, 2024 Order on Hearing, *Hoffer v. Kenney-Prentiss*, Cause No. 06D01-2402-PO-332 (Boone County Sup. Ct. 1), Dkt. 50-1. (emphasis added))

5. In the interim, on September 22, 2024, Kenney-Prentiss filed a paternity action in Boone County Circuit Court, captioned as *In the Matter of the Paternity of James M. Kenney-Prentiss, II*, Case No. 06C01-2407-JP-245 (Boone County Circuit Court). In that action, the parties have been involved in a custodial dispute over their minor son.

**Kenney-Prentiss files first motion to compel discovery**

6. On May 6, 2025, Kenney-Prentiss filed a motion to compel discovery in the custody dispute. It appears from the state court docket that such filing has been placed under seal by the Boone County Circuit Court. As a result, a true and accurate copy of the motion to compel is being filed under seal as Exhibit 1.

7. Two days later, on May 8, 2025, Hoffer filed a response to the motion to compel discovery, a copy of which is attached as Exhibit 2 (excluding Exhibits A & B which are available on the state court docket). In her response, Hoffer outlined the extensive efforts she and her counsel had undertaken to respond to his discovery and the immense pressure on her time and financial resources, to include:

a. Kenney-Prentiss's discovery demand was sixty-five pages long and contained many items that were objectionable. This demand was in addition to, and in many parts duplicative of, the over 150 discovery items and 163-page transcript of Ms. Hoffer's deposition in the protection order matter.

b. Hoffer responded timely and in good faith, producing hundreds of pages of documents, including her 2024 and January 2025 savings and checking statements; her 2024 and 2025 credit card statements; monthly pay statements for 2024 and 2025; communications regarding the au pairs; emails to teachers for the minor child; various other emails that she was able to identify as requested; tax documents; Ohio State University release and medical records; counseling records that were provided to Dr. Ferraro; her psychological evaluation in its entirety; the TRO supporting documents requested; school

documents for the minor child; her driver's registration; life insurance policy; mortgage information and vehicle registration, as requested.

c. Hoffer sat for an eight-hour, in-person deposition at Kenney-Prentiss's demand, producing a 293-page transcript.

d. Many of Kenney-Prentiss's requests were not specific enough to elicit a response and appeared aimed at eliciting information about Hoffer for Kenney-Prentiss's own personal purposes (e.g., "Were you in any long term partnerships prior to your partnership with father? …Please state (a) the date and place of each such prior partnership; (b) the persons to whom you were in a partnership with; (c) the date of termination of each such prior partnership; and (4) the reason for termination of each such prior partnership." (Ex. B to Ex. 2 (available on state court docket) at p. 37), and "What do you contend Father could have done, which he did not do, that could have changed your opinion as to whether or not to continue your relationship with Father, during both: (a) the time Father and Mother lived together from 2020 – 2023; and (b) after Father moved out of Mother's residence in September 2023?" (*Id.* at p. 58).

8. On May 9, 2025, after holding a hearing on May 8, 2025, the Boone County Circuit Court entered an order denying Kenney-Prentiss's motion to compel. A copy of the court's order is attached as Exhibit 3.

**Kenney-Prentiss files second motion to compel discovery**

9. On May 19, 2025, Kenney-Prentiss filed a second motion to compel in the custody dispute. It appears from the state court docket that such filing has been placed under

seal by the Boone County Circuit Court. As a result, a true and accurate copy of the motion to compel is being filed under seal as Exhibit 4.

10. On June 3, 2025, the Boone County Circuit Court denied the second motion to compel. It appears from the state court docket that such order has been placed under seal by the Boone County Circuit Court. As a result, a true and accurate copy of the order is being filed under seal as Exhibit 5.

**Kenney-Prentiss is sanctioned for his discovery conduct.**

11. On July 10, 2025, after extensive discovery in the state proceedings, the Boone County Circuit Court held a final hearing in the custodial matter.

12. On October 6, 2025, the Boone County Circuit Court entered Findings of Fact and Conclusions of Law, granting sole legal custody and primary physical custody of the minor child to Hoffer. (Dkt. 50-9.)

13. In its order, the Boone County Circuit Court issued fees and expenses against Kenney-Prentiss for his litigation conduct and the significant economic impact it had on Hoffer and her family, finding * that Hoffer had spent $160,000 in attorneys' fees in the custodial dispute alone and had also paid $28,881.00 to the court-appointed custody evaluator (with no contribution from Kenney-Prentiss for the custodial evaluation), * that Kenney-Prentiss had provided the custodial evaluator "with more documentation to review than any other party to a custodial evaluation that he can recall," * that Kenney-Prentiss's "unusual and aggressive manner of litigating th[e] case was neither customary nor necessary, and it resulted in fees to [Hoffer] that could have otherwise gone to support [the minor child] and the family," * that Hoffer had taken "out a second mortgage on her home to have representation against [Kenney-Prentiss's] many motions and discovery requests," * that the

Court had "advised [Kenney-Prentiss] that his manner of litigation was bordering on abuse of process … yet he continued litigating in a similar manner for the next 9 months," and * that Kenney-Prentiss's "unwarranted conduct in th[e] case cost [Hoffer] substantially more in attorney's fees than was reasonable and typical for a case of this kind, and it was not in [the minor child's] best interest." (*See* Dkt. 50-9 at 36- 37 (Oct. 6, 2025 Findings of Fact and Conclusions of Law).)

14. As a result, the court ordered Kenney-Prentiss pay to Hoffer $45,000 toward Hoffer's attorney's fees and $8,000 toward reimbursement of the custodial evaluator. (*Id.*)

15. That order is currently stayed while an appeal by Kenney-Prentiss is pending. Kenney-Prentiss has not paid the amounts awarded to Hoffer in the order.

**Current discovery dispute**

16. On July 13, 2026, Hoffer sent her written discovery responses to Kenney-Prentiss, noting that responsive documents would be produced after a review for privilege. A copy of the written responses are available on the docket at Dkt. 53-1 at 27-42 (Response to Plaintiff's First Set of Requests for Production), Dkt. 53-1 at 72-75 (Answers to Plaintiff's First Set of Interrogatories), Dkt. 53-1 at 100-102 (Responses to Plaintiff's First Set of Requests for Admission).

17. On July 16, 2026, Kenney-Prentiss sent a letter setting forth the alleged deficiencies in Hoffer's discovery responses, a true and accurate copy of which is attached as Exhibit 6.

18. On July 21, 2026, Hoffer's counsel and Kenney-Prentiss held a call to discuss discovery and then emailed the courtroom deputy, requesting a call with the Magistrate Judge. A true and accurate copy of that email is attached as Exhibit 7.

19. On July 23, 2026, Hoffer's counsel produced 617 documents (945 pages).

20. On July 26, 2026, Kenney-Prentiss sent a follow-up letter to Hoffer's counsel, a true and accurate copy of which is attached as Exhibit 8.

21. On July 27, 2026, Hoffer's counsel sent a letter to Kenney-Prentiss regarding the items of discussion from the July 21, 2026 call and the follow-up actions taken by Hoffer and her counsel following the call, a true and accurate copy of which is attached as Exhibit 9. Ms. Hoffer's counsel also re-produced the July 23, 2026 production to ensure it was searchable.

22. On August 4, 2026, Hoffer's counsel provided Kenney-Prentiss with a letter setting forth a list of eleven terms that had been run against emails and text messages from October 1, 2023 to the present, to demonstrate the overbreadth and undue burden of those requests. (Dkt. 53-1 at 52-54.) For those searches that yielded a reasonable number of hits, Hoffer provided additional non-privileged responsive emails and text messages (41 documents totaling 51 pages), along with a few of the irrelevant hits so that Kenney-Prentiss could "better understand our position that the search terms are overbroad and that a complete review would be burdensome due to the high volume of privileged documents." (*See* Dkt. 53-1 at 54.)

23. That same day, Hoffer provided Kenney-Prentiss with Supplemental Responses to Plaintiff's First Set of Requests for Production, supplementing her responses to Request Nos. 1, 2, 10, and 15. (Dkt. 53-1 at 45-51.) Hoffer also provided Kenney-Prentiss with a privilege log. (Dkt. 53-1 at 89-90.)

24. On August 7, 2026, the undersigned counsel engaged in further correspondence with Kenney-Prentiss, noting his preference to "avoid filing motions with the Court," that

"Hoffer has sought to provide [Kenney-Prentiss] with additional information and documents," and that "[i]f there is something reasonable within the bounds that you seem to be missing that we can go out and get, I would be willing to work on it." A true and accurate copy of that email exchange is attached as Exhibit 10.

25. That same day, Hoffer's counsel produced an additional 8-page document, a medical record marked Attorneys'-Eyes-Only.

26. On today's date, Hoffer's counsel produced two additional text message documents totaling 3 pages.

## II. LEGAL ARGUMENT

The Motion to Compel includes six sections, titled: "1. Ms. Hoffer's Prior Conduct Invites Skepticism," "2. Good Faith Discovery Conduct," "3. Plaintiff's Requests for Production," "4. Plaintiff's Requests for Admission and Interrogatories," "5. Additional Shortcomings," "6. Requested Relief." This submission responds to each in turn.

### 1. Hoffer's prior conduct does not invite skepticism but rather highlights the unduly burdensome and harassing nature of Kenney-Prentiss's discovery.

In Part 1, Kenney-Prentiss notes that "[t]his is not the parties' first discovery dispute," and that the undersigned counsel is Hoffer's "fifth attorney," which he argues are reasons to "scrutinize her current discovery responses with appropriate skepticism." Then, in Part 1.1, Kenney-Prentiss points to discovery disputes in the state court proceedings pertaining to Hoffer's alleged failure to preserve records. In Part 1.2, Kenney-Prentiss contends that Hoffer has "been consistent in raising questionable objections to discovery demands" (including referencing a 60-page RFA he served in the protective order matter). In Parts 1.3 and 1.4, Kenney-Prentiss accuses Hoffer of failing to produce a handful of documents in the custodial dispute, and he faults Hoffer for the alleged non-appearance of two witnesses in that matter.

Past discovery disputes are probative—but not in the way that Kenney-Prentiss suggests. Rather, they reveal the true extent of the discovery undertaken in the parties' prior two proceedings. Kenney-Prentiss is asking for much of the same information in the hope that this Court will say yes where the state court said no. He should not be permitted to plow old ground—and it is unclear what ground has not been plowed. To the extent that Kenney-Prentiss had issues with Hoffer's discovery responses in the state court proceedings, it was incumbent upon him to raise them in the state court. In fact, he did—by filing two separate motions to compel, both of which were denied. Moreover, the state court sanctioned Kenney-Prentiss for his discovery tactics, awarding Hoffer $45,000 in attorneys' fees, an amount that has yet to be paid.

**2. Kenney-Prentiss has not shown good faith behind his requests.**

In Part 2, Kenney-Prentiss seeks to characterize his discovery efforts and demands as being made in good faith, pointing to Excel spreadsheets that he prepared identifying the purported relevance of 143 search terms directed to Hoffer's employer and numerous objectionable requests directed to her co-parent (which are the subject of Hoffer's pending motion for protective order, Dkt. 50, and many or all of which were included in the state court discovery requests). As Kenney-Prentiss claims, preparing the Excel spreadsheet "was not a small undertaking." (Imagine the actual search for the non-parties.)

Kenney-Prentiss also explains how Hoffer could use the "iMazing" program to "easily compile responsive documents from her phone." But he has understated the burden. His request requires complete conversations rather than just a compilation of hits, which would require Hoffer to open and export each conversation individually. Notably, in providing screenshots of how to compile text messages, Kenney-Prentiss includes an image of Hoffer's

minor son in his underwear and sensitive messages from Hoffer to Kenney-Prentiss in April 2023. The use of those sensitive exemplars could be incidental. Given the parties' history, it seems not.

### 3. Plaintiff's Requests for Production

In Part 3, Kenney-Prentiss demands different responses to his requests for production. He moves the Court to compel responses to Request Nos. 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 13, 14, and 15. Hoffer has responded appropriately to those requests or otherwise stated appropriate objections. She should not be compelled to respond further.

In **RFP No. 1**, Kenney-Prentiss asked that Hoffer "[p]roduce all messages, emails, recordings, or other communications, including ESI, to which Defendant is a party, concerning, relating to, or referring to Plaintiff or the subject matter of this action."

The interactions between Kenney-Prentiss and Hoffer extend back nearly a decade. Hoffer objected to the request being overly broad, unduly burdensome, not proportional to the claims in this case, abusive, and harassing. The length of the parties' relationship and the breadth of Kenney-Prentiss's request would make the search for and production of "all messages, emails, recordings, or other communications, including ESI, to which [Hoffer] is a party, concerning, relating to, or referring to [Kenney-Prentiss] or the subject matter of this action," a nearly impossible task to complete and not proportional to the needs of this case. Hoffer further objected to this request to the extent that it would seek communications or documents that are privileged, including the attorney-client and work product privileges.

Following further meet-and-confers, Hoffer ran a search and provided responsive and relevant documents, as identified and set forth in the letter describing the search that she

performed in the correspondence dated August 4, 2026. Counsel has let Kenney-Prentiss know that further searches could be run if they were reasonable. There is nothing to compel.[1]

In **RFP No. 2**, Kenney-Prentiss asked Hoffer to "[p]roduce all messages, emails, recordings, or other communications, including ESI, to which Defendant is a party, concerning, relating to, or referring to the Protection Order Proceedings."

In response, Hoffer objected to the request as being overly broad, unduly burdensome, not proportional to the claims in this case, abusive, harassing, and an effort to utilize this federal action to re-do discovery already completed in past state court proceedings. As written, this request seeks "all messages, emails, recordings, or other communications, including ESI, to which Defendant is a party, concerning, relating to, or referring to the Protection Order Proceedings," which are defined as meaning "the proceeding Cause Numbers 06D01-2402-PO-332 and 06C01-2412-PO-2038, including Defendant's petition, attachments, incident narrative, drafts, exhibits, communications, hearing preparation, and related ESI. This definition is used only to identify factual materials and communications; it is not a request for state-court rulings as such." To the extent that Kenney-Prentiss seeks documents or communications pertaining to those state court proceedings, they were available to him in those other proceedings, including via the court docket. It would be an undue burden to require Hoffer to search for and produce "all messages, emails, recordings, or other communications" relating to those past proceedings without proportionally reasonable

[1] Kenney-Prentiss points out that Hoffer sent Kenney-Prentiss a nearly identical discovery request. The undersigned counsel admits that the question was a poorly framed one, and he would have withdrawn it if Kenney-Prentiss had simply pointed that out at the time. At that point in time, the undersigned counsel did not have an understanding of the extensive discovery that had already occurred in the prior proceedings, nor did he expect that Kenney-Prentiss would produce over 50,000 pages of documents in his document responses.

parameters. Hoffer further objected to this request to the extent that it would seek privileged communications or documents.

In a supplemental response, Hoffer noted that the documents pertaining to the Protection Order Proceedings are equally available to Kenney-Prentiss, as demonstrated by his production of such materials to Hoffer in his own discovery responses (which exceeded 50,000 pages of material). To the extent that Kenney-Prentiss maintained that there were non-privileged documents or communications unavailable to him, Hoffer set forth her willingness to meet and confer on which specific records he needs or as to reasonable search parameters, see Exs. 9, 10, but to date he has specified none. Again, there is nothing to compel.

In **RFP No. 3**, Kenney-Prentiss asked Hoffer to "[p]roduce all messages, emails, recordings, or other communications, including ESI, to which Defendant is a party, concerning, relating to, or referring to the Paternity Proceeding."

Hoffer objected to the request as being overly broad, unduly burdensome, not proportional to the claims in this case, abusive, harassing, and an effort to utilize this federal action to re-do discovery already completed in past state court proceedings. As written, this request seeks "all messages, emails, recordings, or other communications, including ESI, to which Defendant is a party, concerning, relating to, or referring to the Paternity Proceeding," which is defined as meaning "the proceeding styled In re the Paternity of James M. Kenney-Prentiss II, Boone Circuit Court, Cause No. 06C01-2407-JP-000245. This definition is used only to identify factual materials and communications; it is not a request for state-court rulings as such." To the extent that Kenney-Prentiss seeks documents or communications pertaining to that state court proceeding, they were available to him in that other proceeding, including via the court docket. It would be an undue burden to require Hoffer to search for and produce

"all messages, emails, recordings, or other communications" relating to that past state court proceeding without proportionally reasonable parameters. Hoffer further objected to this request to the extent that it would seek communications or documents that are privileged. These objections were well stated and should be sustained.

**RFP No. 4** deserves special attention. In it, Kenney-Prentiss asked Hoffer to "[p]roduce all messages, emails, recordings, or other communications, including ESI, to which Defendant is a party, concerning, relating to, or referring to Defendant's current and former intimate partners, notwithstanding the messages, emails, recordings, or other communications between Defendant and the discussed current and/or former partner."

Hoffer rightly objected to this request as being abusive, harassing, and an invasion of her privacy. As written, the request asks Hoffer to identify and produce all messages, emails, recordings, or other communications "concerning, relating to, or referring to" her "current and former intimate partners." This request is harassing on its face and is not an appropriate use of the federal discovery process. Hoffer further objected to this request to the extent that it would seek communications or documents that are privileged. Those objections are appropriate and should be sustained.

In **RFP No. 5**, Kenney-Prentiss asked Hoffer to "[p]roduce all documents, notes, journals, calendar entries, summaries, messages, drafts, or records or documents relating to the subjects listed in Request No. 5.1, 5.2, 5.3, and 5.4, and any oral statement by Defendant to any Third Party about any aforementioned subject, including the date, recipient, substance, and context of the statement, to the extent such documents exist."

Hoffer objected to this request for the reasons set forth above as to Request Nos. 1-4 (5.1, 5.2, 5.3, and 5.4), including that the request is overly broad, unduly burdensome, not

proportional to the claims in this case, abusive, and harassing. As set forth above, the scope of the requests posed in Request Nos. 1-4 seeks to misuse discovery in this case to re-do discovery from past state court cases, seeks to invade Hoffer's privacy, and, particularly as to the request into intimate partnerships, seeks to harass and intimidate Hoffer. Hoffer further objected to the request to the extent that it would seek communications or documents that are privileged. Those are appropriate objections and should be sustained.

In **RFP No. 6**, Kenney-Prentiss asked Hoffer to "[p]roduce all Communications with school personnel, medical providers, mental-health providers, custody evaluators, parenting coordinators, therapists, counselors, victim advocates, or similar professionals concerning Plaintiff, Plaintiff's contact with Child, Plaintiff's parenting, domestic violence, abuse, stalking, harassment, safety, Child's relationship with Plaintiff, or parenting-time/FaceTime restrictions involving Plaintiff, not otherwise covered in Requests 5.1 through 5.5."

Hoffer objected to the request for the reasons set forth above as to Request Nos. 1-5 (5.1, 5.2, 5.3, 5.4, and 5.5), including that the request is overly broad, unduly burdensome, not proportional to the claims in this case, abusive, and harassing. Hoffer further objected to this request as being compound. As set forth above, the scope of the requests posed in Request Nos. 1-5 seeks to misuse discovery in this case to re-do discovery from past state court cases, seeks to invade Hoffer's privacy, and, particularly as to the request into intimate partnerships, seeks to harass and intimidate Hoffer. Given all these problems with the discovery as written, it is impossible for Hoffer to parse out what other documents or communications exist that would "not otherwise [be] covered in Requests 5.1 through 5.5." Hoffer further objected to this request to the extent that it would seek communications or documents that are privileged. Those objections are proper and should be sustained.

**RFP No. 8** requested "all documents and nonprivileged communications with any witness or potential witness concerning testimony, affidavits, declarations, depositions, discovery responses, subpoenas, hearing attendance, nonattendance, cooperation, recollection, credibility, preparation, or what any person should say about Plaintiff, Child, parenting time, the Protection-Order Proceedings, the Paternity Proceeding, this Federal Action, or Plaintiffs Property, not otherwise covered in Requests 5.1 through 5.5."

Hoffer objected to the request for the reasons set forth above as to Request Nos. 1-5 (5.1, 5.2, 5.3, 5.4, and 5.5), including that the request is overly broad, unduly burdensome, not proportional to the claims in this case, abusive, and harassing. Hoffer further objected to the request as being compound. As set forth above, the scope of the requests posed in Request Nos. 1-5 seeks to misuse discovery in this case to re-do discovery from past state court cases, seeks to invade Hoffer's privacy, and, particularly as to the request into intimate partnerships, seeks to harass and intimidate Hoffer. Given all these problems with the discovery as written, it is impossible for Hoffer to parse out what other documents or communications exist that would "not otherwise [be] covered in Requests 5.1 through 5.5." Hoffer further objected to this request to the extent that it would seek communications or documents that are privileged. Again, those objections are proper and should be sustained.

In **RFP No. 9**, Kenney-Prentiss asked Hoffer to "[p]roduce all documents in which Defendant threatened, suggested, discussed, or expressed a desire to exclude Plaintiff from Child's life, limit Plaintiffs contact with Child, harm Plaintiffs reputation, harm Plaintiffs career, contact Plaintiffs employer, contact Plaintiffs family or friends with negative information, punish Plaintiff for leaving the relationship, or use legal process as leverage against Plaintiff, not otherwise covered in Requests 5.1 through 5.5."

Hoffer objected to the request for the reasons set forth above as to Request Nos. 1-5 (5.1, 5.2, 5.3, 5.4, and 5.5), including that the request is overly broad, unduly burdensome, not proportional to the claims in this case, abusive, and harassing. Hoffer further objected to this request as being compound. As set forth above, the scope of the requests posed in Request Nos. 1-5 seeks to misuse discovery in this case to re-do discovery from past state court cases, seeks to invade Hoffer's privacy, and, particularly as to the request into intimate partnerships, seeks to harass and intimidate Hoffer. Given all these problems with the discovery as written, it is impossible for Hoffer to parse out what other documents or communications exist that would "not otherwise [be] covered in Requests 5.1 through 5.5." By way of further objection, Hoffer stated that this request appears to seek all documents or communications pertaining to Kenney-Prentiss's access to Child, which was one of the primary subjects of the prior state court proceedings. To the extent Kenney-Prentiss disputes those custodial issues, they are appropriately raised with the state court, not in this federal action. Hoffer further objected to this request to the extent that it would seek communications or documents that are privileged. These are appropriate objections and should be sustained.

In **RFP No. 10**, Kenney-Prentiss asked Hoffer to "[p]roduce all documents and communications concerning Defendant's understanding, statements, instructions, or representations about whether the protection order did or did not restrict Plaintiff's ability to communicate with Child, FaceTime Child, see Child, arrange exchanges, communicate with school personnel, communicate with au pairs, or exercise parenting time."

Hoffer objected to this request as confusing and compound, rendering the request unduly burdensome and not proportional to the claims in this case. As written, the request appears to ask Hoffer to identify all documents and communications regarding her

"understanding, statements, instructions, or representations about whether the protection order did or did not" do a whole host of things. Hoffer further objected to this request to the extent that it would seek communications or documents that are privileged, including the attorney-client and work product privilege. Hoffer invited Kenney-Prentiss to reasonably narrow the scope of the request to make it a manageable and appropriately proportional request. In a supplemental answer, Hoffer responded that the documents pertaining to the Protection Order Proceedings are equally available to Kenney-Prentiss, as demonstrated by his production of such materials to Hoffer in his own discovery responses. To the extent that Kenney-Prentiss maintained that there was some non-privileged document or communication that was not available to him, Hoffer set forth her willingness to meet and confer on what specific records he needed but that has not been otherwise made available to him.

In **RFP No. 11**, Kenney-Prentiss asked Hoffer to "[p]roduce all documents concerning all requests by Plaintiff to FaceTime and conduct parenting time with Child, and all instances of Plaintiff's FaceTime and parenting time with Child, all instances of child exchanges, and all plans, denials, cancellations, limitations, or refusals of FaceTime and parenting time from September 1, 2023 through the present, including Defendant's response, any stated basis for denial, limitation, delay, condition, supervision, or cancellation, and any related Third-Party Communications (not to include communication between Plaintiff and Defendant)."

Hoffer objected to the request as being unduly burdensome, overly broad, not proportional to the claims in this case, harassing, abusive, and compound. The subject of parenting time, child exchanges, and issues pertaining to denial, limitation, delays, conditions, supervision, or cancellation of such parenting issues are the subject of the state

court custodial proceedings. Hoffer further objected to this request to the extent that it would seek communications or documents that are privileged.

In **RFP No. 13**, Kenney-Prentiss asked Hoffer to "[p]roduce all documents Defendant contends support any denial of the Complaint, any affirmative or additional defense in Defendant's Amended Answer, any contention that Plaintiff suffered no damages or failed to mitigate damages, any contention that Plaintiff acted in bad faith, or any request by Defendant for costs, fees, sanctions, or similar relief in this Federal Action, to the extent not produced in response to the preceding requests."

In response, Hoffer objected to the request to the extent that it seeks "all documents" to essentially every aspect of the defensive side of this case, including the answer to the complaint, additional defenses, damage defenses, any contention that Kenney-Prentiss acted in bad faith, or any request made for costs, fees, or sanctions. Hoffer further objected to the request to the extent that it would seek communications or documents that are privileged, including the attorney-client and work product privileges. Subject to and without waiving these objections, Hoffer set forth that the documents that she intends to rely upon in this case include those exchanged in discovery and produced in response to this request, the pleadings and filings in this case and the other state court proceedings between the parties, as well as a redacted copy of her attorneys' fees and costs to be provided along with any request for such fees. Responsive documents have been produced. There is nothing to compel.

In **RFP No. 14**, Kenney-Prentiss asked Hoffer to "[p]roduce all communications between Defendant and third parties on the following pertinent dates in the Parties' shared history, which are relevant to issues in this case: 2018: September 20 - September 25; 2019: October 29 - October 31; 2022: August 28 - September 8, November 17 - November 19,

December 25 - December 27; 2023: September 2 - September 6, September 21 - September 22, September 27 - September 30; 2024: January 25 - January 26, January 31 - February 14, February 27 - March 1, April 5 - April 9, May 20 - May 22, May 24 - May 28, May 31 - June 1, June 9 - June 10, December 17 - December 19; 2025: December 29, 2024 - January 6, 2025, January 20 - January 25, February 13 - February 15, May 25 - May 27, August 18 - August 25, November 5 - November 8, December 29; 2026: January 19, February 8 - February 9, February 13 - February 14, February 23, March 10 - March 11, March 27, April 3, April 13."[2]

Hoffer objected to the request as being overly broad with regard to subject matter and temporal scope, unduly burdensome, not proportional to the claims in this case, abusive, and harassing. As written, the request is also ambiguous, either requesting all relevant communications for the listed dates or requesting all communications from those relevant dates, many of which predate the applicable statute of limitations. In either case, the request is not an appropriate utilization of the federal discovery rules but rather is a fishing expedition aimed at harassing Hoffer and invading her privacy. Hoffer further objected to this request to the extent that it would seek communications or documents that are privileged, including pursuant to the attorney-client and work product privilege, counselor privilege, therapist privilege, physician-patient privilege, and the Family Educational Rights and Privacy Act. Those objections are well stated and should be sustained.

[2] This request is similar to (and even broader than) one that Kenney-Prentiss unsuccessfully sought to compel on May 6, 2025 in the state court custody dispute. (*See* Ex. 1 at 11.)

In **RFP No. 15**, Kenney-Prentiss asked Hoffer to "[p]roduce all communications and documents, including complete threads and attachments, from January 1, 2022 to the present, to the extent they contain any of the following terms," including nearly 140 common words.[3]

Hoffer objected to this request as being overly broad, unduly burdensome, not proportional to the claims in this case, abusive, and harassing. As written, this request asks Hoffer to run a search for nearly 140 common word terms over a period of more than four-and-half years. That is not an appropriate utilization of the federal discovery rules but instead is a fishing expedition aimed at harassing and burdening Hoffer and invading her privacy. Hoffer further objected to the extent the request would seek privileged communications or documents.

In a supplemental response, Hoffer acknowledged that, in a July 26, 2026 letter from Kenney-Prentiss, it appeared that Kenney-Prentiss was open to striking several terms from the original list. Even with such modification, however, the remaining terms are still unmanageable. In an effort to reach a reasonable compromise, Hoffer ran searches on the following terms for the date range of October 1, 2023 – Present: 1. Consen*, 2. James, 3. HPV*, 4. Kenney-Prentiss, 5. Kidnap*, 6. "Order of Protection", 7. "Protection Order", 8. Rape*, 9. Stalk*, 10. STD*, and 11. Suicid*. Based upon that search, responsive and relevant documents were produced, as set forth in the letter describing the search performed by Hoffer in correspondence dated August 4, 2026. (Dkt. 53-1 at 52-54.) That effort by Hoffer to narrow the search terms to a less onerous list and to provide responsive documents was appropriate

[3] This request is similar to (and even broader than) one that Kenney-Prentiss unsuccessfully sought to compel on May 6, 2025 in the state court custody dispute. (*See* Ex. 1 at 11.)

under the rules. She should not have to run additional searches in a fishing expedition. There is nothing to compel.

#### 4. Plaintiff's Requests for Admission and Interrogatories

In Part 4, Kenney-Prentiss takes issue with Hoffer's responses to request for admission numbers 1, 2, and 4, and interrogatory numbers 1, 2, 3, and 4. Those issues are not properly raised here, as they were not addressed either in the parties' telephonic meet-and-confer nor in the Court in the parties' discovery call. More importantly, there is nothing improper about Hoffer's objections and responses, and nothing for this Court to compel.

**Interrogatory No. 4** warrants special attention. It states: "Identify all intimate partners of Defendant from the time of her marriage to the present day, to include the time spans of such partnerships, not for seeking Defendant's sexual history or private romantic history as such, but instead per Fed. R. Evid. 404(B)." (Dkt. 53-1 at 73-74.) Hoffer understandably objected to the interrogatory (as she had to similar requests in the state court proceedings), which asked her to identify her intimate partners, as harassing, abusive, seeking to evade her privacy, and not reasonably calculated to lead to the discovery of admissible evidence. (*Id.*) Those objections should be upheld.

Without relent, Kenney-Prentiss contends that his interrogatory "has a firm legal basis," and references Rule 404(b), which contemplates that evidence of "any other crime, or act" may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, absence of mistake, or lack of accident." (Dkt. 53 at 17-18, 12.) In sum, Kenney-Prentiss contends that since Hoffer may have had unfavorable things to say about prior partners, she should have to give him a list of her "intimate partners". But that is absurd on its face. The objections were well stated and should be upheld.

**Request for Admission No. 1** states: "Starting in 2020, and throughout the time Plaintiff lived with Defendant, Plaintiff began seeing a mental health provider, wherein said provider diagnosed Plaintiff with Adjustment Disorder because of Defendant's abuse of Plaintiff, which resulted in anxiety and depressive symptoms for Plaintiff." (Dkt. 53-1 at 100.) Hoffer appropriately objected to the request as being compound, but subject to and without waiving that objection, denied it. (*See id.*) There is nothing for the Court to compel.

**Request for Admission No. 2** states: "By December 2024, on top of Plaintiff's severely deteriorated physical and mental health, it was reported that Plaintiff was suicidal due to Defendant's legal actions against Plaintiff, and denial of parenting time between Plaintiff and their child-in-common." (Dkt. 53-1 at 101.) Hoffer appropriately objected to the request as being compound, but subject to and without waiving that objection, denied it. (*See id.*) Again, there is nothing for the Court to compel.

**Request for Admission No. 4** states: "Plaintiff's mental health provider's diagnosis of Adjustment Disorder was a correct diagnosis." (Dkt. 53-1 at 101.) Hoffer rightly responded that she "lacks knowledge or information to admit or deny Request No. 4, including because she is not trained to assess a mental health provider's diagnosis." (*Id.*) Kenney-Prentiss faults Hoffer for not saying whether she "conducted a reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." (Dkt. 53 at 16.) The undersigned counsel thought that was implicit in the response—as Hoffer is not qualified to opine on a mental health provider's diagnosis. To the extent that a mantra is required, Hoffer will stipulate that she conducted a reasonable inquiry, <u>including review of a forensic custodial report casting grave doubt on the diagnosis reported by Kenney-Prentiss</u>, and that

the information she knows or can readily obtain is insufficient to enable her to admit or deny is a correct diagnosis. There is nothing for the Court to compel.

**Interrogatory No. 1** states: "If your answer to the Request for Admission is anything other than an unqualified admission, please state in detail the factual basis for your denial." (Dkt. 53-1 at 72.) Hoffer answered: "Ms. Hoffer denies that she abused Mr. Kenney-Prentiss or that she is the cause of his mental health diagnoses." (*Id.*) That is a full and complete response, directly corresponding to the denials of the requests for admission. (*See* Dkt. 53-1 at 100-101.) In his motion, Kenney-Prentiss argues that this response "is prima facie non-compliant with the basic requirements under Fed. R. Civ. P. 33(b)(3)." (Dkt. 53 at 16.) That rule states that: "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Hoffer did exactly that. There is nothing to compel.

**Interrogatory No. 2** states: "In your Answer, Defendant stated that 'Plaintiff has not suffered any damages and/or has failed to mitigate his alleged damages as required by law.' (Docket No. 33, p.91). Please describe in detail the medical and factual basis for this defense." (Dkt. 53-1 at 72-73.) Hoffer objected to this interrogatory to the extent that it seeks the mental impressions of her counsel, but then explained that "from a medical, factual, and legal perspective, Mr. Kenney-Prentiss has not suffered any damages and/or he has failed to mitigate his alleged damages as required by law." (*Id.*) To Kenney-Prentiss, this answer is inadequate because Hoffer "cites no facts and offers no explanation." (Dkt. 53 at 16-17.) But Hoffer cannot prove a negative, and the federal rules do not require her to do so. Kenney-Prentiss has no damages, and he has not mitigated any alleged damages. Hoffer has no additional facts to disprove that which does not exist. There is nothing to compel.

**Interrogatory No. 3** states: "Identify and describe in detail all persons to whom Defendant made disparaging comments concerning Plaintiff, including the material facts of said disparagement, which include, but not limited to, alleged abuse, stalking, harassment, mental health, parental fitness, dangerousness, Child contact, legal process, or Property." (Dkt. 53-1 at 73.) Hoffer objected to the interrogatory to the extent that the term "disparaging" and "disparagement" were vague, ambiguous, and undefined, and interpreted the interrogatory as asking her to identify all persons to whom she has made defamatory comments concerning Kenney-Prentiss. (*Id.*) Based upon that understanding, the answer was none. (*See id.*) Kenney-Prentiss suggests that there is nothing vague about the request and that Hoffer would have the same objection if he had asked about "derogatory, snide, unfavorable, pejorative, or negative comments." (Dkt. 53 at 17.) He then seeks to limit his request to asking Hoffer to "identify the recipients, approximate dates, media, substance, and corresponding records of communications concerning the subjects expressly listed in this interrogatory." (*Id.*)

Kenney-Prentiss's suggestion that the words "derogatory, snide, unfavorable, pejorative, or negative" could be substituted in for "disparaging", in addition to the fact that he ignores that the interrogatory seek any such comments that "include, but [are] not limited to" certain topics, underscores the vagueness of the request, which would seem to ask Hoffer to catalogue every unfavorable comment that she has ever made concerning Plaintiff, without regard to degree. In sum, it is a bad question, yet Hoffer still sought to answer it in a way that pertained to the legal claims asserted in the case. There is nothing to compel.

**5. There are no "[a]dditional [s]hortcomings."**

In Part 5, Kenney-Prentiss lists several additional gripes with Hoffer's production.

First, Kenney-Prentiss faults Hoffer for not producing communications from WhatsApp, Facebook, and Twitter. His motion is the first time he identified that alleged shortcoming—which is improper in a motion to compel. Regardless, after receiving the motion, Hoffer ran a search of those platforms and identified two communications which she has produced to Kenney-Prentiss today. There is nothing to compel.

Kenney-Prentiss contends that Hoffer "regularly provided screenshots and messages stripped of context and basic identifying information." He accuses Hoffer of failing to produce the records in a useable format and without relevant information. That was not a topic in the parties' meet and confer, and Hoffer disputes that general characterization of her discovery responses. Regardless, the responses have proper context and identifying information, and the undersigned counsel had his firm's IT department re-produce items to assure that they were searchable. (Ex. 9 at 1.) To the extent that there is specific communication that Kenney-Prentiss cannot determine context or identifying information, Hoffer is willing to provide it.

Kenney-Prentiss accuses Hoffer of failing to comply with his instruction that "for all persons identified in a response, supply the person's full name, job title (if known), address, contact information, years known to Defendant, and the nature of their relationship with Defendant." Yet, Hoffer did not identify any persons in her responses to Kenney-Prentiss's first set of interrogatories or his first set of requests for admission, so there was no one to identify and provide such information. And, given the years of litigation and past discovery

between the parties, it is unlikely that Kenney-Prentiss does not already know who any particular person is.[4]

Finally, Kenney-Prentiss faults Hoffer for not cataloguing every responsive document that no longer exists, pointing out that his instructions sought to impose her with the burden of "stat[ing] when, how, and why they were lost, deleted, destroyed, overwritten, transferred, discarded, or became unavailable." To Kenney-Prentiss, "[t]his was not indicated anywhere in her response despite her admission about missing documents, as discussed previously (i.e. new computer)." In doing so, Kenney-Prentiss alludes to the parties' prior state court litigation and discovery disputes from the past. Hoffer responded appropriately to discovery here (and in the prior cases). It would not be a good use of her time or limited resources to try to identify every document that may have existed responsive to Kenney-Prentiss's overwhelming discovery requests and to piece together why it may no longer be available.

**6. Appropriate relief: The motion to compel should be denied as without merit, and Hoffer should be awarded her reasonable attorney's fees in responding.**

Kenney-Prentiss's motion lacks any merit and should be denied in its entirety.

Federal Rule of Civil Procedure 37 grants that, when a motion to compel is denied in the entirety, "the court . . . must . . . require the movant … to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(B); *Slabaugh v. LG Electronics USA, Inc.*, No. 1:12-cv-01020-RLY-MJD, 2014 WL 6453557, at *1 (S.D. Ind. Nov. 17, 2014). The only exception to

[4] As Kenney-Prentiss notes in Footnote 4, any alleged fault with Hoffer's responses to the second set of interrogatories and requests for admission is not before the Court and it would be improper for Kenney-Prentiss to raise it here, Dkt. 53 at 18 n.4.

this mandate to award reasonable fees and expenses occurs "if the motion was substantially justified or other circumstances make an award of expenses unjust." *Id.*

Kenney-Prentiss's motion is not substantially justified. As to some of his demands, Kenney-Prentiss filed the motion without first discussing them with Hoffer's counsel, in direct violation of Local Rule 37-1 and the Court's Scheduling Order. More importantly, Kenney-Prentiss's demands for discovery lack merit and they are abusive and harassing.

Other circumstances do not make an award of expenses unjust under Fed. R. Civ. P. 37(a)(5)(B). To the contrary, Kenney-Prentiss's demands contradict the purposes of the Federal Rules in "secur[ing] the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1. As such, this is an instance where fees are rightly awarded.

**7. CONCLUSION**

For the foregoing reasons, Stephanie Hoffer, by counsel, respectfully requests that the Motion to Compel be denied, that she be awarded her reasonable fees for being required to respond to the motion, and for all other appropriate relief.

Respectfully submitted,

/s/ Philip R. Zimmerly

Philip R. Zimmerly (Attorney No. 30217-06)
Bose McKinney & Evans LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
(317) 684-5000
(317) 684-5173 (FAX)
PZimmerly@boselaw.com

*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2026, a copy of the foregoing document was filed electronically and served on the plaintiff via email (*see* Dkt. 49):

James Michael Kenney-Prentiss
JMKP@JusticeInCleveland.com

/s/ Philip R. Zimmerly
Philip R. Zimmerly