# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| **James Michael Kenney-Prentiss** | Case No. 1:25-cv-2018-MPB-MJD |
| Plaintiff | **Judge Matthew P. Brookman** |
| v. | **Magistrate Judge Mark J. Dinsmore** |
| **Stephanie Renee Hoffer** | |
| Defendant | |

**FILED**
**08/21/2026**
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Kristine L. Seufert, Clerk

# PLAINTIFF'S REPLY BRIEF

## to Defendant's Response to Plaintiff's Motion to Compel Discovery (Docket No. 57)

## Introduction and Summary of Argument

## 1. Ms. Hoffer Does Not Raise Proper Objections

### 1.1. Ms. Hoffer Failed to Clear Her Burden with Precise Reasons

A party moving to compel discovery must first establish relevance of sought-after materials. *Hanwha Corp. v. Heartland Mach. and Eng'g*, LLC, No. 1:22-CV-1475, Docket. No. 78, 3 (S.D. Ind. Feb. 6, 2024) (citations omitted). Once established, the burden shifts to the non-movant to demonstrate "the impropriety of the request." *Id*.

Ms. Hoffer did not object on relevance and thus has the burden.

To meet her burden, Ms. Hoffer must show and explain "precisely [] why each particular request is improper." *Estate of Daniels v. City of Indianapolis, et. al*, No. 1:20-cv-2280, Docket No. 72, 3 (S.D. Ind. Oct. 18, 2021). "[G]eneral objections made without elaboration, whether placed in a separate section or repeated by rote in response to each requested category, are not 'objections' at all — and will not be considered." *Novelty, Inc. v. Mountain View Mktg. Inc.*, 265 F.R.D. 370, 375 (S.D. Ind. 2009). Failing "to articulate precisely how [a] request seeks privileged information" constitutes waiver. *Estate of Daniels*, at 8. Boilerplate arguments (i.e. overly broad, unduly burdensome) that "do not provide any explanation to support [the] objections" are rightly overruled. *Id*. at 12–13.

Ms. Hoffer's objections largely consist of rote, repeated boilerplate (i.e. overly broad, unduly burdensome, abusive, harassing, seeks to intimidate, is an invasion of privacy.). Her response does not remedy this defect. Therefore, her boilerplate objections should also be overruled.

Ms. Hoffer repeatedly objects on privilege without precise articulation. Her privilege log, sent on August 4, 2026, pertains only to materials already submitted. (Exhibit 7). Her Response does nothing to remedy this defect. Thus, her remaining objections on privilege should be overruled.

It can be argued that **all** of Ms. Hoffer's objections are conclusory non-objections. But Plaintiff does not want to straw-man her. Instead, he treated her Response as a steel-man argument and responds accordingly.

### 1.2. Ms. Hoffer's Superficial and Formulaic Response

From page ten (10) to page (24) in her response, Ms. Hoffer attempts to justify her objections item-by-item in a superficial and formulaic manner.

Each response follows the same formula:

- Quote Plaintiff's RFP/RFA/Interrogatory.
- Reassert the same non-objection objections
- Assert that the objections are sound and should be sustained.

Ms. Hoffer does offer more in some of her item-by-item responses (covered below). But ten (10) of her specific-item responses are exactly this. (RFPs 3, 4, 5, 6, 8, 9, 11; RFAs 1 and 2; Interrogatory 1). Her boilerplate language includes the following conclusory objections:

- 'Overly broad' (10 times)
- 'Unduly burdensome' (11 times)
- 'Not proportional' (11 times)
- 'Abusive' (12 times)
- 'Harassing' (12 times)
- Seeks to 'intimidate' (4 times)
- 'Invasion of privacy' (8 times)
- Seeks privileged documents or communications (13 times)
- Prohibited due to factual overlap with state court cases[1] (8 times)

These objections, without more, are not real objections. Copying and pasting the same boilerplate language does not a good objection make.

### 1.3. Ms. Hoffer's Valid Objection

Defendant objects to having to catalogue "every responsive document that no longer exists." (Docket No. 57, p.26). This was in response to Plaintiff's request concerning lost, deleted, and unavailable records. Her objection is proper. In fact, this was not Plaintiff's intent with this request. But Plaintiff simply wishes to know when certain categories of records became inaccessible. A responsive example would be "Computer files prior to Fall 2024 — Ms. Hoffer obtained a new computer." And if Ms. Hoffer recalls or has knowledge about particular documents, she should say so.

---

[1] Discussed *infra* at 12–13.

## 2. Replies to Specific Examples

Not all of Ms. Hoffer's responses are directly repeated from her original objections. They deserve to be addressed.

### RFPs 1, 2, and 10 — Records re Plaintiff, Child, and the PO

After Defendant reasserted the same objections as before, it was added that "[c]ounsel has let Kenney-Prentiss know that further searches could be run if they were reasonable." (Docket No. 57, p.11). She proffers "her willingness to meet and confer," but Plaintiff has not responded. *Id*. at 12. She made the same proffer in discussing RFP 10. *Id*. at 17.

This occurred on August 7, 2026, the same day as this Court's filing deadline for the parties' discovery motions. (Docket No. 57-7). The letter detailing the additional searches was sent on August 4. Meanwhile, Plaintiff had previously informed counsel that he would be in a criminal jury trial starting on August 2 and his bandwidth would be limited.

Plaintiff appreciates Defendant's willingness to engage in further searches. But her last-minute proposal cuts both ways — it was not *until* after she sent her objections and this Court became involved did Ms. Hoffer search her records. Of course, Plaintiff would want to prevent Defendant from having to produce "[o]ver 2,350" emails with the word 'James' in it because the search included "Google news summaries; marketing spam; correspondence with lawyers." (Exhibit 2).

It is true that since August 7, neither Plaintiff nor Defendant's counsel has attempted to confer about this issue on a conference call, likely because both parties are set to appear before this Court on this very issue.

Ms. Hoffer's offer to run more searches is simply too little, too late. Plus, Plaintiff does not want to have to request a discovery conference and draft motions to compel just to bring Ms. Hoffer back into discovery negotiations.

And at this point, Plaintiff would prefer this Court — not Ms. Hoffer — to be the one to decide what would be "reasonable." Ms. Hoffer simply does not deserve to be given the benefit of the doubt in light of her current objections and the manner she has responded in discovery thus far.

### RFP 13 — Records on Defendant’s Denials and Defenses

Ms. Hoffer’s response is nearly identical to what she stated in her discovery response. (*Compare* Exhibit 5, p.11–12 *with* Docket No. 57, p.18) (i.e. she incorporates all documents exchanged in discovery and all filed in state court). But she does make one key alteration — she changes “[r]esponsive documents are being produced” to “[r]esponsive documents have been produced. There is nothing to compel.”

This answer is an oddity. On one hand, Ms. Hoffer appeared to make an overbroad objection (“objected to the request to the extent that it seeks ‘all documents’ to essentially every aspect of the defensive side of this case.”). On the other hand, her production thus far has been minimal. *Supra* at 10.

If Ms. Hoffer’s current discovery production encompasses the entire universe of documents supporting ‘essentially every aspect of the defensive side of the case,’ Plaintiff requests that it be made clear.

### RFP 14 — Communications on Specific Dates

In her objection, Ms. Hoffer adds “the request is also ambiguous, either requesting all relevant communications for the listed dates or requesting all communications from those relevant dates.” (Exhibit 5, p.13).

Plaintiff is confused about the confusion. In this RFP, he asked:

> **Specific Dates**. Produce all communications between Defendant and third parties on the following pertinent dates in the Parties’ shared history, which are relevant to issues in this case. *Id*. at 12.

This was also explained in the *Brief in Support*, “[t]his RFP requests communications between specific dates in the parties’ shared history.” (Docket No. 53, p.14). Plaintiff even explained how to do it in iMazing. *Id*. at 8 (For texts, “a user can select a specific date range and create a chronological pdf for just that range.").

Plaintiff does not understand the confusion about asking for messages that occurred during a specified range of dates.

Ms. Hoffer also objects because many of the requested dates "predate the applicable statute of limitations." (Docket No. 57, p.19). This is not proper, as barring discovery on these grounds would be contrary to law.

The Seventh Circuit is clear, "time-barred acts are allowed as support for a timely claim." *Kellogg v. Ball State Univ.*, 984 F.3d 525, 529–30 (7th Cir. 2021) (quotation omitted). This Court has also been clear, "facts are not claims, and they cannot be time-barred." (Docket No. 29, 4) (Order on Defendant's Motion to Strike and Deny).

Plus, Plaintiff's theory of the case is that Ms. Hoffer began much of her tortious conduct well before two years ago. Therefore, these incidents are properly included as justiciable tortious acts due to the "continuing violation doctrine." *E.g. Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001).

**RFP 15 — The Search Terms**

This RFP is characterized as asking Ms. Hoffer to "run a search for nearly 140 common word terms over a period of more than four-and-half years." (Docket No. 57, p.20). But this is not accurate. Like with the subpoena to Indiana University, Plaintiff had reduced the number of terms at Defendant's request. (Exhibit 6, p.2–3). A corrected list is included in Exhibit 1.

**Interrogatory 2 — "Cannot Prove a Negative" Affirmative Defense**

Plaintiff asked Defendant for the medical and factual basis for her defense that Plaintiff has not suffered damages/failed to mitigate. (Docket No. 57, p.23). In responding to Plaintiff's argument that she "cites no facts and offers no explanation," Ms. Hoffer responds she "cannot prove a negative, and the federal rules do not require her to do so." *Id*.

But this is not a correct statement of law. In fact, there is a "disconnect between [a party] asserting a defense or affirmative defense in its Answer, which implies it has a factual basis to do so, but then not providing information about that factual basis." *Klein v. Nat'l Health Ins. Co.*, No. 4:25-CV-112, Docket No. 59, 6 (S.D. Ind. May 5, 2026). This Court is well within its rights to order Ms. Hoffer "to answer it now and supplement as additional information becomes available to [her]." *Id*.

## Interrogatory 3 — Disparaging Comments

Plaintiff requested Ms. Hoffer detail persons with whom she disparaged him. In her response, she went beyond her repeated objections and alleged that the interrogatory "would seem to ask Hoffer to catalogue every unfavorable comment that she has ever made concerning Plaintiff, without regard to degree." (Docket No. 57, p.24).

This is an odd objection. In contract law[2], there is the cannon of construction *ejusdem generis* (additional items in a list apply only to things of the same kind or class as those expressly mentioned). There is also the more general maxim *noscitur a sociis* (it is known by the company it keeps), instructing one to resolve ambiguity by examining context.

In objecting on vagueness, Ms. Hoffer quotes only part of the RFP's operative language. (It is quoted in full in her introductory section).

> The interrogatory seeks "any such comments that 'include, but [are] not limited to' certain topics, underscores the vagueness of the request, which would seem to ask Hoffer to catalogue every unfavorable comment that she has ever made concerning Plaintiff, without regard to degree." *Id.* (emphasis in original).

The "certain topics" are specific — "which include, but not limited to, alleged abuse, stalking, harassment, mental health, parental fitness, dangerousness, Child contact, legal process, or Property."

This is not Plaintiff asking for Ms. Hoffer's comments about Plaintiff's (at times) questionable cooking choices, his thoughtlessness about things due to his ADHD, or Plaintiff's contrary taste in music. Through the lens of both *ejusdem generis* and *noscitur a sociis*, the degree, threshold, and general subject matter of what Plaintiff is asking is clear.

## Interrogatory 4 — Prior Partners and Fed. R. Evid. 404(b)

Ms. Hoffer states this item "warrants special attention" and asserts Plaintiff's Fed. R. Evid. 404(b) argument is "absurd on its face." (Docket No. 57, p.21). This is worth addressing.

---

[2] Ms. Hoffer teaches 1L Contracts at McKinney Law School.

First, discovery "is not determinative upon the question of admissibility of evidence." *Griffith v. A. Downey et al.*, No. 1:17-cv-00194, Docket No. 84, 6 (S.D. Ind. Sept. 20, 2018). Discovery objections based on Fed. Evid. R. 404(b) are therefore "unfounded." *Id*.

Furthermore, the discovery of materials (a) beyond the statute of limitations period and (b) relevant under 404(b) is proper. *Hurt v. Vantlin*, No. 3:14-CV-92, Docket No. 231, 3–5 (S.D. Ind. July 20, 2016) (After citing 404(b), the court notes "even if the investigation post-dates the time period on which Plaintiffs' malicious prosecution claim is based, the evidence sought goes to the malice element of that claim because it may show personal animosity."); *see Sims v. Pappas*, 73 N.E.3d 700 (Ind. 2017) (A tortfeasor's prior conduct in unrelated but similar offenses was especially relevant given the Plaintiff's request for punitive damages).

Fed. R. Evid. 404(b)(2) permits "other acts" evidence "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Plaintiff's theory of the case is that Ms. Hoffer defamed, disparaged, and intentionally and emotionally harmed prior partners, and changed how she spoke about them depending on her interests at the time. Also, she has been consistent in proffering herself as a victim, oftentimes with allegations against her current and former partners. Additionally, the abuse of process and malicious prosecution claims center around Ms. Hoffer's denied petition for an order of protection against Mr. Kenney-Prentiss. In it, she described a years-long history of terror. Plaintiff intends to offer evidence to rebut this and will demonstrate that she documented her terror narrative in earnest only after Plaintiff left her.

Ms. Hoffer's motives behind her tortious actions will be demonstrated through what she said — and when — about current and former partners. Her intent to harm Plaintiff will be likewise demonstrated. Her opportunity to present herself as a victim of intimate partner violence was contingent upon who she was with, and when. Her preparation and planning will be demonstrated based on what she needed from whom, and when (i.e. changes of description about and enlisting Mr. Perry in her tortious conduct against Plaintiff). These other acts will demonstrate Ms. Hoffer was not mistaken — nor did she make an unfortunate series of accidents — when she engaged in the years of tortious conduct towards Plaintiff.

## 3. Other Issues

### 3.1. Social Media Messages

The Response claims that Plaintiff's motion "is the first time he identified that alleged shortcoming [about social media messages] —which is improper in a motion to compel." (Docket No. 57, p.25). But this is not true.

On July 21, 2026, the parties discussed this on the phone. Present were Plaintiff, counsel for Defendant, and counsel's paralegal. The parties specifically discussed "social media posts and messages" when discussing communications (WhatsApp, Facebook, and Twitter were not specified).

Additionally, this was explicitly covered in Plaintiff's discovery demand:

> "Communication" means any transmission, exchange, publication, or receipt of information, including emails, text messages, iMessages, Our Family Wizard messages, **WhatsApp messages**, Venmo notes, **social-media messages**, comments, posts, **direct messages**, letters, notes, voicemails, calls, FaceTime, video calls, recordings, screenshots, calendars, and memoranda of oral statements." (Docket No. 53-1, Exhibit 18, p.3) (emphasis added).

Also, Plaintiff is not in a position to know the specific social media platforms Ms. Hoffer has used. Requiring Plaintiff to cite the specific social media platforms Ms. Hoffer uses is just as absurd as asking Plaintiff to correctly identify all third parties with whom Ms. Hoffer communicates.

Plaintiff did not specifically mention 'social-media messages' in his letters with counsel. Nor did he specifically mention 'Venmo notes', 'voicemails', or 'memoranda of oral statements.'

Plaintiff did not include these specific terms because he did not have to; holding otherwise would mean that parties must list every single specific possible discovery item in their formal correspondence to obtain relief — a proposition that is actually "absurd on its face." (Docket No. 57, p.21).

### 3.2. Records Stripped of Basic Identifying Information

The response claims the topic of 'screenshots and messages stripped of context without basic information' was "not a topic in the parties' meet and confer." (Docket No. 57, p.25). This could be technically true, but Defendant **was** put on notice about this issue. (Exhibit 6, p.1) ("The entire production consisted of image-only documents. There is no searchable text layer […] The documents often lack context, times, and dates.").

Defendant even wrote a letter in response (Docket No. 57-6, 1) ("we have asked our IT person to re-produce the Zip File to assure that the documents produced to you are searchable […].").

### 3.3. Ms. Hoffer's Lacking Production

Ms. Hoffer asserts she "disputes that general characterization of her discovery response" as stripped of context and lacking in identifiable information. Docket No. 57, p.25. She also proffers the volume of her discovery response to date. *Id*. at 7–8. (945 pages; 51 pages; 3 pages).

But she cannot seriously dispute this. First, among her response were 431 pages of photographs. The photos lack all information except a Bates number. She produced 319 Our Family Wizard journal entries, accounting for 278 pages; only 116 journal entries were new to Plaintiff (Her previous response in state court spanned September 2023 to February 2025). She produced 28 pages of court filings and orders; none of them new. She produced a dozen pages of emails, none of them new. She produced other redundant materials (i.e. the parties' text messages, duplicate screenshots).

Among her relevant correspondence with third parties, only 40 pages appear new to Plaintiff.

Ms. Hoffer's efforts amount to (a) going to OFW and downloading a single bulk journal PDF from September 2023 to present; (b) resending some of the same documents already produced between the parties; (c) selecting 400+ photographs from her photo collection; (d) doing eleven term searches; and (e) sending around 40 new pages of relevant messages.

Lastly, Plaintiff has already addressed the issues with her use of context-and-information-lacking screenshots. (Docket. No. 53, p.10).

### 3.4. Good Faith?

Ms. Hoffer accuses Plaintiff of bad faith. (Docket No. 57, p.9). She also argues that her prior discovery actions highlighted by Plaintiff as to "invite skepticism" are, in fact, **favorable** to Ms. Hoffer. *Id*. at 8.

Since Plaintiff was apparently unclear in his meaning, another example is appropriate. In both the protection order and custody case, Plaintiff asked Ms. Hoffer to produce documents relating to her denied protection order:

> Protection Order Case: "Full and complete copies of documents made by [her] or any third party, to include any and all records of communication, with knowledge or awareness about […] discussions regarding Protection Orders, potential legal action, and actual legal action between [the parties]." (Exhibit 8).
>
> Custody Case: "all documents relating to [Ms. Hoffer's] anticipation, plan, thoughts, comments and advice from others, communications, and all other such matters on anticipated, potential, or actual legal issues with [Plaintiff], including […] orders of protection." (Exhibit 9).

Ms. Hoffer responded, "See attached" and "Objection, attorney-client privilege," respectively. As part of that state court production, Ms. Hoffer provided the previously-discussed screenshot text to Mr. Perry in February 2024 about "needing to get this PO in […]." (Exhibit 10).

And yet, it was not until her response in **this case** did Ms. Hoffer produce additional text messages between her and Mr. Perry, from September 2023 and February 2024, that specifically discussed her then-future protection order petition. (Exhibit 13) (Mr. Perry asks if she wants him to send materials and the legal criteria for a PO); (Exhibit 12); (Exhibit 11) (Ms. Hoffer asks, "[h]ave you drafted one of these PO requests?").

And it was not until **her supplement** that she produced an email from Mr. Perry for "Instructions for filing a PO" from February 2024 (Exhibit 14).

Most telling is the fact that her screenshot excerpt about "needing to get this PO in…" was part of a larger conversation with Mr. Perry about the protection order that was only just recently provided by Ms. Hoffer. *Compare* (Exhibit 10) *with* (Exhibit 11).

This was no accident.

### 3.5. Overbreadth and a Revealing Inconsistency

Ms. Hoffer repeatedly objects to Plaintiff's discovery requests as overly broad. (Docket No. 57, p.10, 11, 12, 13, 14, 15, 16, 17, 19, and 20).

At the same time, she appears to argue that the universe of discoverable documents has already been discovered. Defendant notes Ms. Hoffer's state court discovery responses in 2024 and 2025. Ms. Hoffer asserts that the "[r]esponsive documents have been produced" relating to "essentially every aspect of the defensive side of this case." *Id*. at 18. When discussing the parties' state court discovery disputes, Defendant states "it is unclear what ground had not been plowed." *Id*. at 9.

Herein lies a revealing inconsistency. Ms. Hoffer's argument to prevent further discovery is premised on the overlap between the state and federal cases, and the fact that Mr. Kenney-Prentiss was **unable to get discovery** in the state custody case. *Id*. ("Kenney-Prentiss is asking for much of the same information in the hope that this Court will say yes where the state court said no."). Inherent in this argument is the fact that there exists a universe of **relevant** documents — documents Plaintiff has not yet obtained.

Nowhere does Ms. Hoffer object on relevance. She never explicitly claims that she has turned over all relevant documents. Nor does she differentiate the overlapping universe of documents with the non-overlapping universe of documents to argue that the difference makes responding more difficult here.

She cannot now minimize the number of undiscovered relevant documents; otherwise, she would not have repeatedly objected on overbreadth. Logic dictates that her only remaining position is one where she admits (a) a large number of relevant, discoverable documents exist and (b) Plaintiff is not in possession of said documents.

Implicit is an admission that she was able to successfully hide these relevant, responsive documents from Plaintiff in state court. She then cites the custody court's denials of Plaintiff's prior discovery motions as the primary reason for this Court to deny Plaintiff's current motion.

In effect, Ms. Hoffer is asking this Court to allow her to hide responsive, relevant documents just like the state court did.

### 4. Ms. Hoffer's Misplaced Reliance on State-Court Actions

Ms. Hoffer's heavy reliance on the decisions of a state custody court is misplaced. Plaintiff previously covered this in his *Plaintiff's Response Brief to Defendant's Motion for a Protective Order* (Docket. No. 60, p.3–5).

The custody order is not the panacea Ms. Hoffer purports it to be. It was stayed in full by the Court of Appeals. Ms. Hoffer's request to reconsider alleging danger to her and Child was denied. *Id*.

The custody court's final order was not the result of an adversarial hearing with both parties present. Plaintiff did not attend the final custody hearing because of a good-faith mistake about the trial court's authority and Ind. Trial Rule 53.1. *Id*.

Ms. Hoffer quotes extensively from the court's final order. Notably, except for one of the introductory paragraphs, the final order was adopted verbatim from Ms. Hoffer's +8,800-word proposed order.

Ms. Hoffer and the trial judge are also both law professors at the Indiana University McKinney School of Law. Plaintiff discovered this fact on his own months into the custody case. While the trial judge served as an adjunct, Ms. Hoffer served as a chaired law professor on the Executive Committee with the constitutional authority to advise the dean over the appointment of adjuncts, and on budgetary decisions generally.

Plaintiff notes that in her protection order petition, Ms. Hoffer cited fears over rape, stalking, and murder. Despite the preponderance of the evidence standard she had to meet, Ms. Hoffer's petition for an order of protection was denied following Plaintiff's cross examination of her and Plaintiff's motion for a judgment on the evidence after Ms. Hoffer rested.

And finally, the law does not prohibit parties seeking relief in both state and federal court concerning the same factual background. Parties are free to file suits in both state and federal court even when "the facts underlying the state court suit are no doubt relevant as background to the federal action." *Xantech Corp. v. Ramco Indus., Inc.*, 159 F.3d 1089, 1093 (7th Cir. 1998); *Kowalski v. Boliker*, 893 F.3d 987, 995–96 (7th Cir. 2018) (Plaintiff was not barred from bringing a tortious interference claim in federal court after an adverse state-law custody order.).

## 5. Ms. Hoffer's Attorney's Fee Request

Ms. Hoffer wants attorney's fees because of Plaintiff's discovery motion, calling it "not substantially justified." (Docket No. 57, p.26–27). She states Plaintiff's discovery demands "lack merit and [] are abusive and harassing." *Id*. She claims — incorrectly — that Plaintiff "filed the motion without first discussing [his demands] with Hoffer's counsel." *Id*. at 27; *supra* at 9–10.

Her request for fees should be denied. Her justifications are incorrect and conclusory. One may think that Plaintiff's discovery demands are objectionable, but there is no doubt that his demands are tied directly to the claims in the Complaint. (*E.g.* the item-by-item explanatory spreadsheet, linking each item to specific claims, Docket No. 50-13, p.4–14).

Lastly, other circumstances make an award of expenses unjust. Ms. Hoffer cited from her drafted-and-adopted state court order at length. In it, despite knowing that Plaintiff currently makes $750/week in gross income, she imputed his income to $1,724/week and ordered Plaintiff to pay her 40% of his gross weekly income along with $17,451 in retroactive child support, $45,000 in attorney's fees, and $8,000 reimbursement for her custody evaluator. (Docket No. 50-9, p.34–37). And despite Plaintiff's inability to afford insurance, Ms. Hoffer had him ordered to undergo rigorous and expensive psychological testing and weekly treatment to see his son unsupervised and for more than two hours at a time. *Id*. at 22, 37.

## 6. Housekeeping Notes

Plaintiff previously made two incorrect case citations:

1. **Tortious Interference** (Docket No. 60 p.5). Plaintiff stated *Kowalski v. Boliker*, 893 F.3d 987, 995–96 (7th Cir. 2018) held that the plaintiff was not barred from bringing a parental interference tort claim in federal court after an adverse state-court ruling. It was not a parental interreference claim, just a tortious interference claim. The parental interference discussion was an internal citation to *Lloyd v. Loeffler*, 694 F.2d 489, 490 (7th Cir. 1982).

2. **Federal Circuit** (Docket No. 60 p.27). Plaintiff cited *Haggart v. United States*, 38 F.4th 164, 171 (D.C. Cir. 2022), but he named the incorrect court. It should be *Haggart v. United States*, 38 F.4th 164, 171 (Fed. Cir. 2022).

## 7. Conclusion

WHEREFORE, Ms. Hoffer has not met the necessary burden under the rules. Her responses and explanations are lacking, at times misleading, and wholly insufficient to sustain her stated objections. Plaintiff should be granted relief consistent with his *Brief in Support* and the common sense of this Court, along with all other just and proper relief.

Respectfully Submitted,

*/s/James M. Kenney-Prentiss/s/*
**James M. Kenney-Prentiss**
Plaintiff, *Pro Se*
1220 West 6th Street, Suite 303
Cleveland, Ohio 44113
440-212-8787
JMKP@JusticeInCleveland.com

## Certificate of Service

I hereby certify that on August 21, 2026, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system.

Respectfully Submitted,

*/s/James M. Kenney-Prentiss/s/*
**James M. Kenney-Prentiss**
Plaintiff, *Pro Se*